UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANNA MARIE W., | ) |
|     Plaintiff | ) ) ) |
| v. | ) )   1:20-cv-00446-DBH |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

**THE ADMINISTRATIVE FINDINGS**

The Commissioner's final decision is the February 26, 2020 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 14-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

claims, 20 C.F.R. § 404.1520.

The ALJ found that Plaintiff has a severe, but non-listing-level impairment consisting of hemochromatosis, a condition that causes Plaintiff to retain excessive iron. (R. 13.) The ALJ further found that despite her impairment, Plaintiff has the residual functional capacity (RFC) to perform sedentary work except she can frequently stoop, push or pull with her bilateral lower extremities and climb ramps and stairs; occasionally kneel, crouch, crawl, and climb ladders, ropes or scaffolds; and must avoid unprotected heights. (R. 14.) Based on the RFC finding, Plaintiff's work experience and transferable skills, and the testimony of a vocational expert, the ALJ concluded that Plaintiff can perform substantial gainful activity, including the representative occupations of cashier, appointment clerk and telephone solicitor. (R. 21-22.) The ALJ determined, therefore, that Plaintiff was not disabled. (R. 22.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to

experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff asserts the ALJ erred in his assessment of (1) Plaintiff's subjective symptoms as reflected by her activities of daily living, (2) Plaintiff's degenerative hip disease, and (3) the opinions of Plaintiff's treating physician.

### A.  Subjective Symptom Evaluation

As treatment for hemochromatosis, Plaintiff undergoes therapeutic phlebotomies every four to six weeks.  She alleges that she suffers from extreme fatigue following the treatments and that the fatigue directly impacts her ability to maintain employment.

As part of his assessment of Plaintiff's subjective complaints, the ALJ found Plaintiff's activities of daily living to be inconsistent with the extent of impairment Plaintiff alleges.  The ALJ noted Plaintiff's activities, including cooking, light house cleaning, caring for her dog, doing laundry, managing money, paying bills, driving a car, knitting, playing games on her phone, shopping online, watching television, visiting with her children and grandchildren, interacting with her sisters (including canning with them), and maintaining her relationship with her husband.  (R. 18.)  Plaintiff contends the evidence reflects she is limited in the activities cited by the ALJ: she cooks, but only using a crock pot (R. 173); she feeds the dog and lets him out, but does not walk the dog or perform other tasks related to pet care (R. 172, 205); and she does laundry and light cleaning, but cannot lift or use the vacuum cleaner and needs help from her husband and sisters. (R. 173, 206.)

"[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an

3

[ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations."[2] *Rucker v. Colvin*, No. 2:13-cv-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted).  Here, the ALJ assessed Plaintiff's reported daily activities in the context of the medical record and supportably determined "that the physical and emotional demands of [Plaintiff's] activities of daily living are inconsistent with the nature and degree of impairment she alleges." (R. 18.)  The ALJ did not err in his assessment of Plaintiff's daily activities.

To the extent Plaintiff's challenge to the ALJ's assessment of her daily activities is construed as a broader argument that the ALJ did not properly address Plaintiff's complaints of fatigue and how her fatigue might impact her attendance at work, Plaintiff's argument fails.  Plaintiff testified that the phlebotomy sessions last up to an hour, but does not provide any reliable evidence that the treatments would cause her to be absent two times or more per month, or demonstrate why she could not schedule the treatment appointments outside of customary work hours.  *See Gagnon v. Colvin*, No. 15-cv-273-DBH, 2016 WL 403063, at *2 (D. Me. Jan. 13, 2016) (*aff'd*, Feb. 2, 2016) (no error in step 2 determination that plaintiff's anemia was non-severe or in not accounting for twice-

---

[2] Social Security Ruling 16-3p "provides guidance about how [components of the Social Security Administration will] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act) and blindness claims under Title XVI of the Act." 81 Fed. Reg. at 14166.  In the statement of purpose, the Ruling explains that based on a commissioned study, the Administration determined it should "eliminat[e] the use of the term 'credibility' from [its] sub-regulatory policy," i.e. former Ruling 96-7p, because the term does not appear in the Administration's regulations. *Id.* at 14167.  Nevertheless, "the deferential standard of review [of an ALJ's evaluation of a claimant's allegations of disabling symptoms] . . . continues to apply following the adoption of SSR 16-3p, but for the use of the term 'credibility.'" *Christopher D. v. Berryhill*, No. 1:17-cv-377-JHR, 2018 WL 4087477, at *4 (D. Me. Aug. 24, 2018).

monthly 90-minute treatments where plaintiff failed to show anemia met 12 month durational requirement, and cited no medical evidence of past frequency or future likelihood of anemia or the availability of twice-monthly treatments at times other than during customary work hours). Furthermore, the ALJ did not rely exclusively on Plaintiff's report of daily activities when she evaluated Plaintiff's complaint of fatigue. The ALJ's assessment of Plaintiff's subjective complaints/symptoms also included a review and assessment of the medical records and opinions, including the findings of State agency medical consultant Archibald Green, D.O., who opined that Plaintiff's reported fatigue was "unexplained" and that she was capable of light work with some restrictions. (R. 19-20, 94, 95-97.)

**B. Step 2 – Degenerative Hip Disease**

The ALJ found Plaintiff's bilateral degenerative hip disease to be non-severe at step 2. At step 2 of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but the burden is de minimis, and is designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123-24 (1st Cir. 1986). The ALJ may find that an impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. *See also* Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2 (*aff'd*, Feb. 12, 2009). In addition, an impairment must meet the 12-month durational requirement in order to be considered "severe." 20 C.F.R, § 404.1509; *Mulero v. Comm'r of Soc. Sec.*, 108 F. App'x 642, 644 (1st Cir. 2004) (to be severe, impairment must satisfy durational requirement).

The ALJ noted that while the records reflect Plaintiff's greater trochanter tenderness, inability to tandem walk, and the lessening of her legs' flexion at the hip and internal and external rotation, the records also describe Plaintiff's ability to squat and rise and heel/toe walk with normal gait, strength and reflexes, and lack of deformity, ecchymosis, warmth, or effusion. (*Id.*) The ALJ also observed that radiographic imaging of Plaintiff's hips showed only early degeneration with minimal marginal spurring of the

6

acetabulum superolaterally and small subchondral cysts in the right hip joint, and very mild marginal spurring of the acetabulum superolaterally in the left hip. (R. 15.)  The ALJ further noted that Plaintiff has not required surgery on either hip, has received only conservative care (cortisone injections, courses of Prednisone, over-the-counter pain medication, and home exercises), has not been prescribed pain medications on an on-going basis, does not require assistive devices to ambulate, and her symptoms appear to have improved with treatment.  (*Id.*)

Whether the ALJ erred in the step 2 assessment as to whether Plaintiff's degenerative hip disease is a severe impairment might be debatable.  The Court, however, does not have to resolve the debate.  If error occurred at step 2, remand would only be appropriate if Plaintiff demonstrates that the hip impairment would require a restriction not included in the ALJ's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5.  *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

The ALJ considered all of Plaintiff's medically determinable impairments, including those he found non-severe, in formulating Plaintiff's RFC. (R. 15.)  Even if degenerative hip disease were a severe impairment, Plaintiff has not identified additional restrictions that would be necessary to accommodate the hip impairment and that would otherwise be supported by the record.  *See, e.g., Carlton v. Soc. Sec. Admin. Comm'r*, No.

1:10-cv-00463-GZS, 2011 WL 4433660, at *5 (D. Me. Sept. 21, 2011) (*aff'd*, Oct. 12, 2011) (it is the plaintiff's burden to supply the medical evidence needed to establish the degree to which her claimed impairments limit her functional capacity); *see also Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015) ("the important point here is that the plaintiff does not point to any evidence that there was any further limitation on her [functional] ability …, and the burden of proof rests with the claimant through the establishment of an RFC"). Accordingly, even if the ALJ erred in the step 2 assessment, the error would not warrant remand.

## C. Treating Source Opinion

In questionnaires completed in June and November 2019, Plaintiff's treating physician, Nicole J. Smith-Sandilands, M.D., opined that Plaintiff's symptoms, including fatigue and constant bilateral hip pain, would interfere with the attention and concentration needed to perform even simple work. (R. 550-53, 593-96.) She also determined that Plaintiff could handle moderate work-related stress; needed to be permitted to shift positions at will and allowed unscheduled breaks every one to two hours; could sit for less than two hours and stand or walk for less than two hours in an eight-hour workday; could lift and carry less than ten pounds frequently and ten pounds frequently; occasionally twist but rarely stoop, crouch or squat, and climb stairs or ladders; and would be absent from work more than four days per month. (*Id.*)

The ALJ found Dr. Smith-Sandilands' opinions to be unpersuasive because the opinions were inconsistent with Plaintiff's reported activities, Dr. Smith-Sandilands'

contemporaneous treatment records, and the overall record.[3] Plaintiff argues that Dr. Smith-Sandilands' opinions should be given more weight because, contrary to the ALJ's finding, the opinions are more consistent with Plaintiff's complete medical history and because, as her treating physician, Dr. Smith-Sandilands knows more about the Plaintiff's symptoms and level of activity. Plaintiff specifically argues that the ALJ failed to address Dr. Smith-Sandilands' opinion that Plaintiff would need to stand up from a seated position every 30 minutes and would be absent from work more than four days a month.

The regulations that govern the ALJ's evaluation of opinion evidence provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R § 416.90c(a). Moreover, while an ALJ must consider the listed factors – supportability, consistency, relationship with the claimant, specialization, and other factors – "as appropriate[,]" *id*., § 416.920c(a) & (c), he or she need only explain his or her consideration of the two "most important factors[,]" supportability and consistency, and "may, but [is] not required to, explain how [he or she] considered" the remaining three factors. *Id*., § 416.920c(b)(2); *see also Ryan M. St. P. v. Saul*, No. 2:19-cv-00169-NT, 2020 WL 1672785, *2 (D. Me. April 6, 2020) (*aff'd*, May 21, 2020).

Plaintiff has not pointed to any persuasive evidence to support her contention that the ALJ should afford Dr. Smith-Sandilands' opinions more weight. The ALJ supportably

---

[3] The ALJ noted the records reflect that Plaintiff's hemochromatosis was successfully managed and she had only mildly elevated liver function tests and some reported post-phlebotomy fatigue; that physical examinations documented her normal gait, strength, sensation, and reflexes, with no ecchymosis, warmth, effusion, or the inability to squat and rise or heel/toe walk; and that radiographic findings show early degeneration with only minimal right and mild left marginal spurring of the acetabulum. (R. 19.)

discounted the opinions. That is, with appropriate citation to record evidence, the ALJ reasonably and supportably explained the reasons Dr. Smith-Sandilands' opinions are not supported by or consistent with the record evidence. Finally, Plaintiff's suggestion that remand is required because the ALJ did not address each of Dr. Smith-Sandilands' opinions (e.g., the need to stand every 30 minutes) fails because an ALJ "is not required to address individually each and every finding or conclusion" in a medical opinion. *Bisbee v. Colvin*, No. 2:13-CV-95-GZS, 2014 WL 294495, at *6 (D. Me. Jan. 27, 2014). In sum, the ALJ did not err in his assessment of Dr. Smith-Sandilands' opinions.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 13th day of October, 2021.